Thank you, Your Honors, and may it please the Court, I'm Lyle Kosas, and I've been appointed to represent Shane Dodson. Shane Dodson was charged with felony burglary under West Virginia law. If convicted at trial, he faced a mandatory sentence of life in prison. Though this State offered a plea deal that promised not to charge Dodson as a repeat offender, he rejected that plea deal and went to trial because his lawyer gave him bad advice. The State Supreme Court of West Virginia concluded that Dodson received effective counsel, but that decision was wrong for three reasons. First, the State High Court ignored the express credibility findings that the Circuit Court made during the habeas hearing. Second, the evidence reveals that Dodson's attorney misadvised him about the strength of his case because he didn't know the elements of the governing law. And third, Dodson was prejudiced by his lawyer's bad advice because he rejected an otherwise favorable plea deal. The first point, Your Honors, is that the State High Court's decision was based on an lower court's opinion. Let me ask you a separate question. If the State adopted a rule, and it's a hypothetical, so just accept it. The State adopted a rule of State procedural law that on habeas, the State Supreme Court reviews factual findings de novo in every case. And so that happened, and then otherwise, this is the case, right? And so the West Virginia Supreme Court says, this is de novo. We take a look at it. We come out this way. In that scenario, do you agree that we would evaluate the West Virginia Supreme Court's factual findings with ADPA and Strickland deference? I do agree. So that's a matter of State procedural law. That's not cognizable in federal habeas. We're not bringing a State law claim, no. Right. I thought you would. So then, back me up a second. And so when the West Virginia Supreme Court determines what the standard of review is, right, in this case, they read the lower court below, and they determined the standard of review was de novo instead of with deference to the lower court. Why is that any less of a State procedural decision that we don't review for reasonableness or not? We have to accept the State court's ruling on State court law that are lead-ins or sort of the steps that get to the decision making. And so that in the case that we've got here, the West Virginia Supreme Court determined that its standard of review was de novo. That's a matter of State law. We don't review questions of State law. And so instead, what we do is we just look to the West Virginia Supreme Court and their determinations of fact as the last court to issue a reasoned decision, applying edpa deference to that decision, the deficiency decision, not to the standard of review decision. Your Honor, they didn't make a standard of review decision. They made they evaluated a question of historical fact. And the key language is on JA 807. And they said, we need to figure out if the trial court made credibility findings. And as the U.S. Supreme Court said in Parker v. Duggan — Yeah, but Parker's different, right? So what Parker's about is a historical fact about the trial, right? Not a fact about the standard of review between courts on habeas, right? So Parker's about the trial court's finding, not a habeas court finding, but a trial court finding. And all the other cases that y'all include are about a habeas court finding. And let me just say, I think the State's waived this. So I'm not sure that this is, like, crucial for you. But I just want to understand — I'm trying to also, like, get it right. So what I'm trying to understand is why, in your scenario, assume that I think Parker deals with a distinct issue about trial court findings, which are historical fact, not vertical habeas findings, why that's not a State procedural determination of whether deference is due or not. And I might agree or disagree with it, but it's a State determination that we don't review at all. So I agree this is a waiver, and we don't have to address it. But to directly answer your question, if the State had said, we're going to decide this in review under State law, I'd agree we have a tough uphill battle. That seems like a State law question to me. But I will maintain that that's not what the State court said here. And if you look at the language on JA807, it said, had the circuit court made credibility determinations, we would have deferred. And I think that sentence is key. But we would have deferred, right? I mean, that is a standard review determination, right? It's based on a factual belief about what the circuit court did, right? But it's a standard review determination. We make those kinds of standard review determinations all the time. Depending on whether the issue was raised or not raised below. Was it adequately briefed or not briefed? We make decisions about whether we review things for plain error or an abuse of discretion. But that's a standard review determination. And it seems to me that what West Virginia has done here, the Supreme Court, maybe totally incorrectly, I'll accept that as sort of part of the hypothetical. But what they're deciding there is that under their sort of State procedures, that they're finding that it's a de novo review, not an abuse of discretion review. And it just can't be that we're reviewing that State decision. The key here is, you can't divorce this from the initial question the State asks, the State Supreme Court says in its opinion, which is, were there credibility determinations in the first place? And I know you think that Parker's distinct, but let me just try that. Parker's talking about the way the State appellate court characterizes the court ruling is a question of historical fact. Did it read the trial court opinion correctly? And really, the key point I'm trying to make is the trial court, though, not the habeas court. Right? So because what we're talking about there is, like, the point of this that matters and I'll stop, but the point of this that matters is that what we're asking is whether they're detained in violation of the Constitution. And we know that no procedural problem with the habeas proceeding, because there's no right to a habeas proceeding, there's no procedural problem with the State habeas can grant relief. Right? It has to be a problem with the trial, right? Or maybe the appeal. But the trial right, that vertical piece, that's where the problem has to be in order for your client to get out. I mean, you agree with that. And so the historical fact in Parker is not about the habeas court, but about the trial court, which is what we're reviewing. We're reviewing whether he's detained because of a problem with the trial. So let me take my shot at this. I think what Parker's really saying, the way a State appellate court reads a State lower court's opinion, and the way it characterizes its finding, is a question of fact. I don't think it's critical that it's a trial versus habeas. I think the court's saying, if we need to figure out whether the State appellate court erred in its reading of the State trial court opinion, that's a familiar question of historical fact. And that's something we can review under 2254d2. And then in the last, so the last question, and then I'll let my colleagues go, is that the import of that is that that also would be true if they were determining plain error or harmless error or any other standard of review. Because what you're saying is, is that a State standard of review determination that's based on a factual reading of the habeas court's decision, that that's a factual determination that we look at, even though it's a matter of State law, we evaluate that under like our deferential standard. So the key is, you're not really evaluating the State law component. Our point is, we're trying to figure out, did the circuit court do X? And that's just, we've got to read its opinion, we've got to read the transcript, that's what Parker says. And it's that question, that question of historical fact, that this court can review. And I do want to emphasize how rare this is. This issue doesn't appear to come up a lot when the State appellate court might misread a lower court opinion. I know it was unpublished, but I would direct the court's attention to the Austin case that we cite in our brief. It's the same State Supreme Court, it's a circuit court opinion there. I know in that scenario it wasn't a habeas court, but Austin said when the State Supreme Court misread the State trial court's decision, that misreading was objectively unreasonable, and that was enough to satisfy 2254 D2. So I do. Well, there are also, there are a lot of Supreme Court appeals decisions from other circuits, like the Sixth Circuit, that says you don't get to review whether the State got the standard of review correct. And I agree. And your argument suggests to me that if it's standard of review related and about a fact below, that you think we do review that. I agree. This says nothing. We're not arguing that you get to review State standard of review determinations. Really the key here is that the State Supreme Court said there were no credibility determinations. Now I understand your point. That's relevant because that might affect the standard of review down the line. But our whole — That's the only thing it was relevant for in the Western Supreme Court, is do we review this with deference or do we review it de novo? That's the standard of review question. Right. But there are other questions in which you can read — in which you can read trial court opinions and misread them. And our whole point is that a misreading of the trial court opinion doesn't have to be tied to issues of State law. And really — By trial court, you mean habeas court. Yes, Your Honor. A circuit court, a trial court, some court of first instance. You can misread those opinions all the time in all kinds of contexts. Really the central point I'm just trying to drive home here is that how the State appellate court reads that State trial court's opinion is a question of fact. I think the State agrees with us on that because we say how they read the trial court opinion. I don't disagree. They agree with you on it. I just don't think y'all agree. Right. No, and just to try and satisfy your answer one more time, really the key point is just  I think she may have a question. I'm sorry. I'm sorry. I know. I'm sorry. I mean, are you — if you have something new to add on that, please go ahead. I think I made my point. So I'm happy to take Your Honor's question. Okay. Yeah. Does it — is the result in this case affected by whether we give it a deference or de novo review? What is your position on that? So we don't — The bottom line. Does your client get relief? Does it matter which standard applied? We think we win under both standards. It's certainly harder if this Court provides epidefference. We all know that. The EDPA's a tough standard to meet. But we still think we win under that. So my bottom line is we win under de novo review. We win under epidefference. But certainly we prefer no epidefference because we do think we've highlighted this threshold error that the State court made. I see I'm cutting into my rebuttal time. I just want to make a couple of quick points on the merits just so we're clear. Really the key issue here is that Dodson's counsel in the trial court proceedings made statements at trial that suggest he did not know the governing law. That's the testimony that came out during the habeas hearing. And we think it's not just a matter of looking at trial counsel statements, but there's other corroborating evidence, too, that highlights that Dodson did receive ineffective advice from his counsel. Dodson's always pled guilty to these crimes before. He's pled guilty to crimes before when he was facing the same recidivist enhancement. And he testifies on JA 644 that in the third criminal conviction to which he pled guilty, that would have triggered the recidivist enhancement under State law. And he said, you know, I pled out there because I don't want to face a lifetime in jail. Those are my... Well, had the West Virginia Court of Appeals, had they read the transcript, which apparently they didn't do, then we would have found those errors. And so that certainly helps your position, doesn't it? Very much so. And even under AEDPA, the law says they can't ignore key aspects of the record. So I very much agree with Your Honors. Yeah, it was just like in that Austin case where they misread the sentencing order. Right. Same thing. Okay. Yeah, I agree. Your Honors, I'm happy to answer other questions, but I'll reserve the remainder of my time for rebuttal. Thank you. Okay. Thank you. Ms. Sieg. Thank you, Your Honor, and may it please the Courts. In this case where Petitioner zeroes in on a single factual finding for the State Supreme Court, there's a very heavy burden that needs to be raised. We of course share the concerns, Judge Richardson, that you raised about expansion of the historical fact doctrine and intrusion on the State standard of review, but I'm not. You've conceded in your brief that the determination about credibility is a historical fact to which deference is due, but Federal courts can review. Yes, Your Honor. I'm not disputing that we did not make those arguments in the brief. That doesn't matter, though, to the outcome here, because even assuming that it is a historical fact that is appropriate for this Court's review, it is still entitled to the double deference for AEDPA. But no matter how much deference you give it, it's really pretty clear the TARC Court was making a credibility assessment, yet the TARC Court said that counsel's arguments were belied. I mean, those were the Court's words. How can that be anything but a credibility assessment? Respectfully, Your Honor, this is not a case that turned on a credibility determination or a relative assessment of the demeanor of the two witnesses. Why not? I mean, the question was of whether the lawyer — what the lawyer said to the attorney, what the reasons were, and whether the attorney's — we're all talking — we're talking about the attorney's performance and whether the attorney, in making some decisions, whether they were decisions that constitute effective assistive counsel, aren't we? Yes, Your Honor. And, of course, the State Habeas Court did make a determination about which account it thought was accurate. But if you look at the actual language of that opinion, it's clear here that it wasn't relative assessments of demeanor or motivations or who was telling the truth that led to that resolve. Here we have an example of a State trial court who was looking for anything else to make that decision. We can see that for three reasons in the State Circuit Court's Habeas decision. First, if you look at the factual findings section, there's a paragraph there at JA 731 that talks about the testimony. It simply states the testimony of Mr. Dodson and the testimony of Mr. Lambert. And then it says that counsel's statements and arguments at trial can be seen to support Mr. Dodson's account. You don't have any finding that Mr. Dodson was more truthful or more reliable. The court specifically looked at the statements and arguments at trial. Then if you move later in the Circuit Court's opinion, you have four specific pieces of external evidence that the Circuit Court looked at, and these do not turn on relative credibility assessments. This is at the Joint Appendix 745 through 47. First, the Circuit Judge looked at the statements that Mr. Dodson made at sentencing that perhaps indicated he didn't fully understand the elements of the offense, and the Circuit Judge discounted that. Second. Well, it sounded like the lawyer didn't understand the elements of a daytime breaking under West Virginia law. Well, Your Honor, as the West Virginia Supreme Court found, that that's not the best reading of the record, or at least it's not an objectively unreasonable reading. That's the second factor that the Circuit Judge — Well, are you saying that Mr. Lambert demonstrated knowledge of what constitutes a daytime breaking? Your Honor, I'm saying that there is not enough to show that Mr. Dodson met his burden to overcome the strong presumption of effective performance. What we have are statements at trial, statements that focus on invitation into the home. Of course, there is one inference that that shows he didn't understand that breaking was not necessary for any conviction. But there's another inference that focusing on invitation showed that Mr. Dodson did not have an intent to commit a crime when he went to the home. Perhaps he went there, and maybe a domestic battery occurred later, but that's only a misdemeanor. It is a complete defense if the jury believed that he went to the home to pick up a car title and not to commit a battery. Okay. You know what, Ms. C., I'd like to give you an opportunity, and, you know, usually I don't get into this, but I'd like to know why the State is so committed to a sentence of life in prison for somebody who committed a daytime burglary at his girlfriend's house. I mean, you know, why would the State's perception of justice be such that the State would want to stick with this argument, despite the very real question regarding what this person was advised regarding that plea bargain agreement? Yes, Your Honor. And I know Your Honor understands that the propriety of the State's three-strike law and recidivist enhancement statute is not properly before this Court, but the State No, I understand. But, you know, it really is something that just resonates throughout the record. How did this kind of situation get this far? Well, respectfully, Your Honor, it's important to look at the underlying offenses here. This was Mr. Dodson's fourth felony conviction, and they escalated in violence over time. In 2000 and 2001, there were felony convictions for possession of a stolen vehicle and grand larceny. Then his third felony conviction was for malicious assault and attempted murder. Now that we have this domestic violence where there were injuries involved, we have a pattern of violence, the underlying offenses were crimes of violence, and it is perfectly appropriate under West Virginia State law in that case when you have triggering offenses that involve violence. Why did the prosecutor offer 1 to 10, then? Your Honor, I can't speak to the motivation of the State prosecutor. Yeah. You know, you see what I'm saying, though. Do you understand? I do understand. I do understand the concerns that Your Honor is raising. But there are many reasons that go into offering a plea or not. In this case, we have a prosecutor who recognized that the State's star witness was not only staying silent, was prepared to defend, to testify on behalf of Mr. Dodson. Perhaps, and again, this is speculation, but perhaps the prosecutor recognized the strength of the State's case was not as strong as Mr. Dodson would say that it is now. Would you agree that the West Virginia Supreme Court of Appeals was wrong to treat the pretrial and sentencing transcripts as, quote, hindsight evidence? Your Honor, yes and no. I believe the West Virginia Supreme Court said that we can't construe something that said at trial through the lens after the fact of ineffective assistance. And so to look at what's being said at trial as evidence of what was said in a closed-door meeting with a client ahead of, before trial, that's reaching too far. We agree that that was an appropriate or at least not an objectively unreasonable result for the State Supreme Court to reach. And that's because there are perfectly plausible explanations for what happened at trial. As Judge Keenan's question earlier brought out, there is a perfectly valid inference as Mr. Dodson argues now that those statements at trial and at sentencing indicate that Mr. Dodson was not properly advised. But it's also plausible that it was part of an effective or at least sound trial strategy to try to raise a defense to the element of intent to enter the dwelling to commit a felony. That invitation element is not irrelevant and it's not simply an error from the attorney. It can be interpreted as sound trial strategy. But doesn't it, you know, let's get back to that credibility point that you were making. Why wasn't it a question of credibility? Because the only people who testified were Dodson, his mother, and Lambert. And the issue was why Dodson rejected the plea. Yes. And there were competing considerations. The explanation of Lambert could not stand beside the explanation of Dodson. One was right and one was wrong. One was correct, one was incorrect. Why wasn't in the context of why a plea was rejected as opposed to was it daytime or nighttime something that can be factually assessed? Why wasn't that inherently credibility determination? Your Honor, because that wasn't the only evidence that was before the court. We agree, of course, there may be some cases where all you have is competing testimony. And in that case, if a judge reaches any result, it is a fair inference that was because of assessments of credibility. Here we have a judge who lamented the fact that he was left with faulty memories and incomplete recollection. What we don't have is the judge saying, but looking into their eyes when I saw their testimony, I thought that Mr. Dodson was more credible than Mr. Lambert. Right. But why are magic words required? Your Honor, I'm — One person was telling the truth and one person was not. Your Honor, I apologize. The State isn't arguing for a magic words requirement. Simply to take the circuit court at its word. The circuit court, after it lamented that it didn't have — that it had this faulty recollection and memories, it said, quote, the most reliable indication of what happened is the record at trial. What about the mid-trial motions? Yes, Your Honor, that is additional extrinsic evidence that shows that the circuit court's decision was not based on these credibility determinations, but an evidence of what happened at trial. The mid-trial motion is another one of the factors, the fourth factor that the circuit court relied on. The circuit court relied on that mid-trial motion, on the statement of sentencing, on the statements in the opening argument, and then also on Mr. Dodson's plea history. So, of course — Well, why don't we think about all of those things? I mean, you know, you're a prosecutor. That is how we judge credibility, right? Is based on the corroborating or lack of corroborating evidence. And all the things that you're saying, the circuit court goes through and says, listen, yes, I've got, you know, faulty and competing memories here. As Judge Keenan indicates, they're just diametrically opposed, right? Black and white. One of them's right, one of them's wrong. You agree with that sort of premise. Like, you can't put them together. I mean, they're just diametrically opposed. Yes, sir, they conflict. And so what the circuit court does is says, listen, I'm trying to figure out, like, what the answer is, and so I look at the corroborating evidence, and the corroborating evidence supports one story or the other, right? And in this case, the circuit court decides it supports Mr. Dodson's story. It seems to me that is exactly what a credibility finding is, right? That you lay out the two stories, you look at the surrounding circumstances, and you say, based on the surrounding circumstances, I believe the story that Dodson told. I don't see how that's anything but a credibility determination. Respectfully, Your Honor, I believe that's a very broad definition of what a credibility assessment would be. That's equating the fact that a judge reaches a bottom-line conclusion of what they think actually happened, and assuming that they must necessarily have believed one of the parties over the other. It's possible in this case the judge could have not believed either of the witnesses fully. The judge could have thought that Mr. Dodson was giving self-interested testimony. Well, yeah, but the judge pretty clearly believed it. I mean, the state court ordered the plea, right? Well, Your Honor, he believed that Mr. Dodson's account was closer to what happened. But the point I'm simply making is that he could have said that neither one of the witnesses were fully credible, and then said, what else do I have in front of me in the record to decide what actually happened in this case? So he could have set aside both of the testimony, essentially, and then looked at what was in the record. And that's exactly what he does if you see the order. Think about that for a minute. What you're saying is that the circuit court could have found they're both lying, neither of them are credible, but based on these corroborating circumstances, none of which really tell any kind of a story, that those corroborating circumstances were sufficient to meet the petitioner's burden to establish a constitutional violation? No way that that's what the circuit court's decision is. I mean, the corroborating circumstances support one side or the other, but they don't independently meet the petitioner's burden. Well, respectfully, Your Honor, that's not the way that the circuit court proceeded. Again, if you look through the three page of analysis, you don't have anything that talks about whether he believed any of the particular witnesses. What you have is marshalling through those four pieces of evidence. You have the judge, every time he talks about Mr. Dodson or Mr. Lambert's testimony, it's in context of what happened at trial. He says about Mr. Dodson at J747, that petitioner's version is supported by the mid-trial motion, not by petitioner's demeanor. This is different, for instance, from the case that Your Honor's just heard, where there was an express credibility determination. Their counsel noted that there was a finding that went to demeanor, that went to motivation. That's the sort of credibility determination that we're looking at here. Here we have a judge who said, I don't know that the testimony I'm receiving recalls what actually happened. What else can I look at? Your Honor, this Court should also reject this broader definition of a credibility determination because we have to look at the highly deferential standard of AEDPA. We have to look at the specific factual finding that the West Virginia Supreme Court made. And the West Virginia Supreme Court Mr. Kosa says it doesn't matter. The West Virginia Supreme Court is so clearly off the rails, is his answer. It said there wasn't a credibility determination and we would have deferred if there had been. And he's saying there plainly was a, I mean, under no reasonable reading of the record could you say this wasn't a credibility determination. So how do you answer his point on that? Well, Your Honor, I understand this Court is skeptical of my position that there is no credibility determination. But Mr. Kosa is ignoring a critical word there. The actual finding is that there are no explicit credibility determinations. And there's no serious dispute about that. That finding at JA 807 is that there are no explicit credibility determinations. And of course the state Supreme Court said if there were it would have given it deference. But we don't know anything about what the state Supreme Court would have done if there were implicit credibility determinations. So this Court doesn't even need to reach what the actual contours of the definition of implicit determination is. All that matters here is that there are no explicit credibility determinations. So it cannot be the case that Petitioner has met his burden to show that this is false by clear and convincing evidence. Okay. Let me ask you a question about the different factors under Frye. Yes. Because there is no constitutional right to a plea agreement. As I understand the state's focus here, the state's focus is not on the second and third. That you're agreeing that the prosecutor wouldn't have withdrawn the plea offer. I mean, they put it on the record it was good for two weeks. And you're agreeing that, I mean, you're not saying or standing before the Court and saying the Court wouldn't have accepted the plea. No, Your Honor, that's not the case. So really the heart of the case here is that first point. The determination regarding counsel's performance and the prejudice. It is, Your Honor, yes. And turning to that point, even if this Court finds that the West Virginia Supreme Court was clearly erroneous when it found there were no explicit credibility determinations, it would still not be appropriate to grant the relief petitioner seeks. We can look first at that prejudice prong. Both sides have agreed that de novo review would be appropriate because the West Virginia Supreme Court did not reach it. But as the U.S. Supreme Court has said, it's not enough to have post hoc assertions from a defendant. You have to have contemporaneous evidence that the defendant would have accepted that plea agreement. And here we have nothing in the plea colloquy on the record that shows any hesitancy. What we do have is an example in a very similar case where Mr. Dodson was also facing a life in prison recidivist enhancement where when he found out that the evidence against him was not as strong as he believed, he tried to withdraw his plea. The petitioner argues that that doesn't matter because in fact he first pled guilty. But that's simply a matter of timing. The reality is that when this petitioner thought that the evidence against him was not as strong as he was originally led to believe, he was willing to roll the dice and go to trial and not take a plea agreement. So that is not enough to show that he would have done something different here. Here he knew that the victim in the case was not only going to not testify but was going to testify for him. Was going to testify that he came to the house for a legitimate purpose and that no battery occurred. But reasonable probability the Supreme Court's made pretty clear in a number of cases. It's not even preponderance. It's a pretty low burden in terms of prejudice, isn't it? It is not the most strenuous burden of course in other areas of the law but it still requires something and what we have here is the most closely analogous situation. We know what Mr. Dodson did. He tried to withdraw his plea even though in that case he was also facing up to 15 years without the enhancement and to life with the enhancement. He was facing very similar penalties so this is not a case where the disparity between the plea and what he could have received was that far off the mark. If this was also a case where the evidence suddenly seemed much less strong for the state than it had been before it's the defendant's burden to show prejudice so even if it is not the most demanding standard, it's still on Mr. Dodson to show it exists. At best, his plea history shows that we have awash and we don't know what he would have done but awash isn't enough to meet his burden to show prejudice. Can I ask just a factual question to make sure I understand it? This occurred in September of 2010. Yes, Your Honor. Was Mr. Dodson held without bail? I believe he was for some period and then he was released. And then he's convicted then in 2011 and from that point since he's been incarcerated. Yes, Your Honor. I believe it was a 28 day period that he was released and so part of the sentence that he is serving does include some of the time served before his conviction. So since September of 2010 he's been out for roughly 28 days? Yes. Thank you. Again, even if this Court sets aside the explicit factual determinations of the West Virginia Supreme Court and looks under the deferential Strickland standard, that is not enough to show an effective assistance here. Five judges who have looked at this case before have found that Mr. Dodson is not entitled to this relief. We agree that if this Court were sitting in a direct review posture or in the first time when a judge is looking at the evidence that this may be a harder question, but that's simply not the case we have here. Here we have reasonable factual determinations. The West Virginia Supreme Court on adequacy emphasized that the habeas court had essentially flipped the burden onto the state away from the petitioner. The habeas court faulted Mr. Lambert for not keeping notes as if it was the state's duty to have to prove what had in fact occurred there other than Mr. Dodson's burden to prove otherwise. We have an example where the state habeas court did not presume strongly that what occurred at trial could have been and likely was the result of a sound trial strategy and not simply because of errors in how counsel understood the elements of the offense. Mr. Dodson here has not met his high burden to show that the factual findings were clearly erroneous the specific finding of explicit credibility determinations he challenges and he also has not met the separate burden to show that what remains in the record leaves us a decision that is factually and objectively unreasonable as an application of clearly established federal law. Thank you, Your Honors. Thank you very much. Rebuttal? Mr. Cousins, don't take comfort in this question, but let's assume that you win. Would the remedy be fashioned as such that we would send it back to the district court on a conditional writ with instructions to see whether or not the state would put the plea back on the table within a reasonable amount of time? If not, then the instructions would direct the district court to issue the writ. What do you think about that relief? I just read Lafleur, the last paragraph in Lafleur which I think says how these are supposed to work and that's pretty close to what you said. I think the way Lafleur envisions these working is this court issues an order reversing and remanding with instructions to grant the writ and per Lafleur, the court says the state has to re-offer the plea we would then accept it and then Lafleur says we then will have to go back to the state trial court to sentence Dotson. We'll have to file a motion there. I think a motion probably to vacate the sentence. I'm not entirely sure technically how we'd phrase it, but some motion to get the court to vacate the life sentence and then adopt the one to ten year sentence. Dotson's pretty close to the ten year mark so depending on when this court issues its opinion, he might be able to seek immediate release but if not, we could then move for parole since he's served more than but we'd be happy with that as well. At least in theory just so I'm walking through that. Sure. If for some reason Mr. Dotson refused the plea, then in theory the state could retry him on a properly understood plea offer and he could potentially end up back where he is. I think that's right I can tell you that I would strenuously. Yeah, we're talking hypotheticals. We haven't thought too much about that as to how that works. I'm not entirely sure. Lafler is relatively new and we haven't looked at all the cases that he implemented. So I'm not even sure that if he rejects the plea, we redo the trial I think that that's probably what would happen that if he says no. Or maybe if he rejects the plea that the conviction stands. I'm not positive but I do want to, I think we might have to redo the trial, but yes that's what would happen. I just want to make two quick points on appeal and then I'm happy to take other questions. I'm in rebuttal I apologize. On the plea withdrawal point if you look at JA 644 Dotson's testifying that he sought to withdraw the plea on advice of counsel and we think that's a really helpful point because it undercuts Lambert's whole theory of the case which is that Dotson doesn't listen to his attorneys. The second point I want to make is that the state court's finding on JA 807 they really do say credibility determinations full stop, not necessarily express. The sentence before the one that Ms. C quotes is the one that says had the state court made credibility determinations. And we think from that, that shows the state high court's thinking generally, not necessarily express. But we agree that all the statements we pulled out in the brief are actually expressed credibility findings on that point. Your Honors, I'm happy to take other questions from the bench but if not we just respectfully request reverse. Okay. Thank you very much Mr. Kosis and Mr. Kosis again I note from the record that you've been court appointed and Mr. Smallsback we appreciate your service truly you've the work that you do for the court is something that we just could not do without so thank you very much for your zealous representation of your kind Thank you, Your Honors. And we will come down and greet counsel at this time and then we'll take a short recess.
judges: Barbara Milano Keenan, Henry F. Floyd, Julius N. Richardson